**09 C I 08067**

| AOC-105<br>Rev. 1-07<br>Page 1 of 1<br>Commonwealth of Kentucky<br>Court of Justice    www.courts.ky.gov<br>CR 4.02; CR Official Form 1 | Doc. Code: CI<br>08/7/2009 02:50 pm<br>Ver. 1.02 | CIVIL SUMMONS | Case No. _____<br>Court ☐ Circuit ☐ District<br>County _____ |

**PLAINTIFF**

National Union Fire Insurance Company

of Pittsburgh, PA, et al.

*JEFFERSON CIRCUIT COURT*
*DIVISION THREE (3)*

**VS.**

**DEFENDANT**

Marathon Petroleum Company, LLC

**Service of Process Agent for Defendant:**

CT Corporation System

4169 Westport Road

| Louisville | | Kentucky | 40207 |

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

   You are hereby notified **a legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

   The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: _____, 2_____

AUG 7 2009

_David L. Nicholson_ Clerk

By: _____ D.C.

| **Proof of Service** |
|---|
| This Summons was served by delivering a true copy and the Complaint (or other initiating document) to: |
| _____ |
| this _____ day of _____, 2_____. |
| Served by: _____ |
| _____ Title |

09 C I 08067

| AOC-105          Doc. Code: CI | | Case No. _____ |
| Rev. 1-07      08/7/2009 02:50 pm | | |
| Page 1 of 1         Ver. 1.02 | | Court ☐ Circuit ☐ District |
| Commonwealth of Kentucky | | |
| Court of Justice   www.courts.ky.gov | **CIVIL SUMMONS** | County _____ |
| CR 4.02; CR Official Form 1 | | |

**PLAINTIFF**

National Union Fire Insurance Company
of Pittsburgh, PA, et al.

*JEFFERSON CIRCUIT COURT*
*DIVISION THREE (3)*

**VS.**

Catlettsburg Refining, LLC

**DEFENDANT**

**Service of Process Agent for Defendant:**

CT Corporation System

4169 Westport Road

| Louisville | | Kentucky | 40207 |

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or** by **an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: _____, 2_____

AUG 7 2009

_David L. Nicholson_ Clerk

By: _____ D.C.

| **Proof of Service** |
| This Summons was served by delivering a true copy and the Complaint (or other initiating document) to: |
| _____ |
| this _____ day of _____, 2_____. |
| Served by: _____ |
| _____ Title |

CASE NO. **0 8 C I 0 8 0**          JEFFERSON CIRCUIT COURT

DIVISION ____

JUDGE____

**COPY**

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

*FILED IN CLERKS OFFICE*
*DAVID L. NICHOLSON, CLERK*

*AUG 7 2009*

*By____DEPUTY CLERK*

*JEFFERSON CIRCUIT COURT*
*DIVISION THREE (3)*

and

LEXINGTON INSURANCE COMPANY          PLAINTIFFS

v.       **COMPLAINT FOR DECLARATORY RELIEF**

MARATHON PETROLEUM COMPANY, LLC

      SERVE:      CT CORPORATION SYSTEM
                     4169 WESTPORT ROAD
                     LOUISVILLE, KY 40207
                     *CERTIFIED MAIL*

and

CATLETTSBURG REFINING, LLC          DEFENDANTS

      SERVE:      CT CORPORATION SYSTEM
                     4169 WESTPORT ROAD
                     LOUISVILLE, KY 40207
                     *CERTIFIED MAIL*

**\*\* \*\* \*\* \*\* \*\* \*\***

      Plaintiffs, National Union Fire Insurance Company of Pittsburgh, PA ("National Union")

and Lexington Insurance Company ("Lexington") (hereinafter collectively referred to as

"Plaintiffs"), by counsel, and for their Complaint for Declaratory Relief against Defendants,

Marathon Petroleum Company LLC ("MPC") and Catlettsburg Refining, LLC ("Catlettsburg

Refining") (hereinafter collectively referred to as "Defendants"), state as follows:

### NATURE OF THE CLAIM

      1.     This is an action for declaratory judgment, pursuant to KRS 418.040, for the

purpose of resolving an actual controversy between the parties and construing the rights and

legal obligations arising from certain contracts of liability insurance issued to Defendants by Plaintiffs National Union and Lexington.

2.     An actual controversy has arisen between the parties concerning whether insurance coverage exists for amounts incurred by Defendants in connection with the defense and settlements of underlying lawsuits filed against Defendants arising out of Defendants' production and distribution of contaminated gasoline under various insurance policies issued by Plaintiffs (hereinafter collectively referred to as the "Policies").

3.     Accordingly, National Union and Lexington seek a declaration from the Court construing the terms of the Policies and declaring the rights and obligations of the parties under their terms.

## JURISDICTION AND VENUE

4.     This Court has personal jurisdiction over Defendants because Defendants have conducted business in Kentucky at all relevant times, and the Policies at issue in this action were issued in Kentucky where the insured was located.

5.     This Court has jurisdiction over Plaintiffs' claims for declaratory judgment under KRS 418.040 because an actual controversy exists between the parties.

6.     Venue in this Court is proper pursuant to KRS 452.450 because Defendants maintain a registered agent and may be properly summoned in this County.

## PARTIES

7.     National Union is a Pennsylvania corporation with its principal place of business in New York, New York.

8.     Lexington is a Delaware corporation with its principal place of business in New York, New York.

9.      Upon information and belief, MPC (formerly Marathon Ashland Petroleum, LLC) is a Delaware Limited Liability Company with its principal place of business in Findlay, Ohio. Upon information and belief, MPC during all relevant times was involved in the design, manufacture, transportation, distribution, and/or marketing of gasoline at the Catlettsburg Refinery in Catlettsburg, Kentucky.

10.      Upon information and belief, Catlettsburg Refining, LLC is a Delaware Limited Liability Company with its principal place of business in Catlettsburg, Kentucky. Catlettsburg Refining, LLC is a wholly-owned subsidiary of MPC.

## FACTS

### The *Loudermilk* Action

11.      On September 7, 2004, a group of owners/operators of underground storage tanks ("USTs") filed a class action lawsuit against Defendants and others captioned *Loudermilk Serv., Inc., et al. v. Marathon Ashland Petroleum, LLC, et al.*, Case No. 3:04-0966 in the United States District Court for the Southern District of West Virginia ("the *Loudermilk* Action"). The *Loudermilk* Action sought damages caused by contaminated gasoline produced at Defendants' refinery in Catlettsburg, Kentucky.

12.      On October 23, 2006, the *Loudermilk* Plaintiffs filed a Third Amended Complaint.

13.      The Third Amended Complaint alleged that the *Loudermilk* Plaintiffs are comprised of "a Class of companies and persons in the State of West Virginia who were supplied and/or sold gasoline contaminated with hazardous wastes, hazardous substances and other contaminants (hereinafter 'Bad Gasoline') that was designed, manufactured, transported, distributed, and/or marketed by the Defendants from the Catlettsburg Refinery (Catlettsburg

Refinery, LLC) in Catlettsburg, Kentucky beginning February 1, 2000 and continuing until June 30, 2004."

14.     On August 8, 2007, the *Loudermilk* class was certified. On September 21, 2007, the United States Court of Appeals for the Fourth Circuit denied MPC's petition to appeal the class certification order. By Order dated January 3, 2008, the time period in the class definition was narrowed from February 1, 2000–June 30, 2004 to February 1, 2000–July 31, 2003.

15.     The *Loudermilk* Plaintiffs alleged that the Bad Gasoline and their related damages arose from various distinct causes, including, without limitation, the specific causes discussed herein.

16.     The *Loudermilk* Plaintiffs alleged that beginning in 2000, Defendants chose to add hazardous waste products from the refining process to finished gasoline. The *Loudermilk* Plaintiffs further alleged that Defendants illegally and improperly disposed of spent caustic fuel by adding it to the gasoline process stream, and distributed and sold the resulting Bad Gasoline, with the expectation that the hazardous waste products would not be discovered and could be illegally disposed of. The *Loudermilk* Plaintiffs further alleged that Defendants failed to remove hazardous wastes, hazardous substances and other contaminants from their finished gasoline in violation of applicable fuel quality standards and regulations. The presence of hazardous materials allegedly caused severe damage to the *Loudermilk* Plaintiffs' USTs.

17.     The *Loudermilk* Plaintiffs also alleged that in 2002, Defendants added mercaptan scavenger to the gasoline in order to remove mercaptans, naturally occurring sulfur compounds, from the gasoline. This process produced excess amounts of caustic water and mercaptan scavenger which caused rust particles and eventually caused the failure of an in-line filter at

Marathon's Viney Branch Terminal. As a result, some of the contaminants were carried downstream into the distribution system.

18. The *Loudermilk* Plaintiffs further alleged that in August 2002, the State of West Virginia demanded that Defendants clean up the region's gasoline system. In response, Defendants developed a remediation project called Project Mountaineer. During Project Mountaineer, contractors hired by Defendants strained the rust-like particulate matter from the Bad Gasoline in the *Loudermilk* Plaintiffs' USTs, but then loaded the Bad Gasoline back into the USTs. The *Loudermilk* Plaintiffs also allege that Defendants failed to remove hazardous wastes, hazardous substances and other contaminants from the Bad Gasoline because they failed to diagnose the causes of the rust-like particles. The *Loudermilk* Plaintiffs alleged that Defendants failed to sample and test fuels and tank bottoms adequately and, as a result, few USTs were repaired or replaced. The *Loudermilk* Plaintiffs also claim that Defendants failed to recall the Bad Gasoline or to advise plaintiffs and government officials that it would cause damage to USTs.

19. The *Loudermilk* Plaintiffs asserted causes of action against Defendants for strict liability; negligence; recklessness or gross negligence; breach of implied warranties; fraud; and fraudulent concealment.

### The Insurance Policies

20. National Union issued Excess Liability Policy No. 346-39-50, for the period of December 1, 1998 to December 1, 1999, to the named insured Ashland, Inc./Marathon Ashland Petroleum LLC. at its principal place of business in Kentucky. Policy No. 346-39-50 was renewed for the periods December 1, 1999 to December 1, 2000 and December 1, 2000 to December 1, 2001, respectively. National Union Policy No. 346-39-50 shares limits of liability

for this layer with policies issued by Lexington (Policy No. 8780278) and American Alternative Insurance Corporation ("AAIC") for the same policy periods. These policies are excess of separate annual $10 million self-insured retentions ("SIR") maintained by MPC. [1]

21.    National Union issued second layer Excess Liability Policy No. 346-39-51, for the period from December 1, 1998 to December 1, 1999, to the named insured Ashland, Inc./Marathon Ashland Petroleum LLC at its principal place of business in Kentucky. This Policy was renewed for the periods December 1, 1999 to December 1, 2000 and December 1, 2000 to December 1, 2001, respectively. National Union Policy No. 346-39-51 shares in the limits of liability for this layer with a policy issued by AAIC. These policies are excess of other layers of underlying coverage including separate annual $10 million each occurrence SIRs maintained by MPC.

22.    National Union issued third layer Excess Liability Policy No. 346-39-52, for the period from December 1, 1998 to December 1, 1999, to the named insured Ashland, Inc./Marathon Ashland Petroleum LLC at its principal place of business in Kentucky. This Policy was renewed for the periods December 1, 1999 to December 1, 2000 and December 1, 2000 to December 1, 2001, respectively. National Union Policy No. 346-39-52 shares in the limits of liability for this layer with policies issued by Lexington (Policy No. 878-279) and AAIC. These policies are excess of other layers of underlying coverage including separate annual $10 million each occurrence SIRs maintained by MPC.

23.    National Union issued Excess Liability Policy No. 3469838, for the period from December 1, 2001 to December 1, 2002, to the named insured Ashland, Inc./Marathon Ashland Petroleum LLC at its principal place of business in Kentucky. National Union Policy No.

---

[1] Due to their voluminous nature, the insurance policies referenced herein are not attached to the Complaint and will be provided at a later date.

3469838 shares limits of liability for this layer with Lexington Policy No. 9550127. These policies are excess of a liability policy issued by AAIC, Policy No. 01-A2-UM-0000149-02, which provides limits of liability of $15 million each occurrence and which is in turn excess of a $10 million each occurrence SIR maintained by MPC.

24. National Union issued Excess Liability Policy No. GE 2860026 for the period from December 1, 2002 to December 1, 2003, to the named insured Marathon Ashland Petroleum LLC (currently MPC). The Policy provides coverage in excess of a $10 million each occurrence SIR maintained by MPC. ·

25. Lexington issued Excess Liability Policy No. 9550193 for the period from December 1, 2002 to December 1, 2003 to the named insured Marathon Ashland Petroleum LLC (currently MPC). The Policy provides coverage in excess of MPC's $10 million each occurrence SIR and National Union Policy No. GE 2860026.

26. National Union issued Excess Liability Policy No. BE 5683494 for the period from December 1, 2003 to December 1, 2004, to the named insured Marathon Ashland Petroleum LLC (currently MPC). The Policy provides coverage in excess of a $10 million each occurrence SIR maintained by MPC.

27. Lexington issued Excess Liability Policy No. 9550253 for the period from December 1, 2003 to December 1, 2004 to the named insured Marathon Ashland Petroleum LLC (currently MPC). The Policy provides coverage in excess of MPC's $10 million each occurrence SIR and National Union Policy No. BE 5683494.

28. National Union issued Excess Liability Policy No. BE 2685195, for the period from December 1, 2004 to July 25, 2005, to the named insured Marathon Ashland Petroleum

LLC (currently MPC). The Policy provides coverage in excess of a $10 million each occurrence SIR maintained by MPC.

29. Lexington issued Excess Liability Policy No. 6500762 for the period from December 1, 2004 to July 25, 2005 to the named insured Marathon Ashland Petroleum LLC (currently MPC). The Policy provides coverage in excess of MPC's $10 million each occurrence SIR and National Union Policy No. BE 2685195.

**MPC's Prior Settlement With its First Layer Carrier AAIC**

30. Upon information and belief, on October 28, 2002, MPC's broker, United Service Agency, Inc. ("USA"), provided notice of Project Mountaineer to AAIC under AAIC Policy No. 01-A2-UM-0000149-02, effective from December 1, 2001 to December 1, 2002.

31. MPC advised that it incurred costs from Project Mountaineer associated with testing and cleanup of third-party property damage totaling $18.2 million.

32. In June 2004, MPC entered into a settlement agreement with AAIC under which AAIC agreed to pay MPC $6.1 million of its $15 million limits of liability of AAIC Policy No. 01-A2-UM-0000149-02, in full satisfaction of all claims arising out of Project Mountaineer under all AAIC policies.

**MPC's Notice of the *Loudermilk* action and other lawsuits to**
**National Union and National Union's Investigation**

33. By correspondence dated July 19, 2005, MPC's broker, USA, provided National Union with notice of Project Mountaineer, the *Loudermilk* Action, and another lawsuit related to Defendants' Bad Gasoline (the *Gray* lawsuit). MPC noticed these lawsuits under National Union Excess Liability Policy No. 3469838, for the period from December 1, 2001 to December 1, 2002. In separate correspondence, also dated July 19, 2005, MPC gave notice to National Union of three additional lawsuits involving Defendants' contaminated gasoline (the *Highlands*

*Chevron*, *Ross*, and *State Farm* lawsuits) (All underlying lawsuits for which MPC has sought coverage under the Policies are collectively referred to as the "Underlying Bad Gas Lawsuits").

34. Chartis Claims, Inc. (formerly AIG Domestic Claims) ("AIGDC") is the claims administrator for the National Union Excess Liability Policies. By letter dated August 25, 2005, and in follow-up letters dated October 5, 2005 and November 3, 2005, AIGDC, on behalf of National Union, reserved all rights, and requested additional information, including whether other insurers had been placed on notice of these matters. The October 5, 2005 letter also requested, among other things, bills, invoices, and proof of payment supporting defendants' assertions that it had incurred $18.2 million in "third-party-related costs."

35. MPC did not forward any supporting documentation, and, on February 27, 2006, AIGDC sent a letter to MPC reiterating its prior requests for all documentation supporting defendants' assertion that it had incurred $18.2 million in costs under Project Mountaineer.

36. In this same February 27, 2006 letter, after being advised that MPC had entered into a prior settlement with its insurer AAIC, AIGDC further requested all documentation that: (a) defendants furnished to AAIC relative to the costs they claim to have incurred relative to Project Mountaineer; and (b) a copy of all correspondence between defendants and AAIC involving settlement discussions.

37. By letter dated June 14, 2006, AIGDC advised MPC that National Union was disclaiming coverage to two defendants in the *Loudermilk* Action (Marathon Oil Company and Marathon Oil Corporation) based on their lack of insured status under the National Union Policy and continued to request additional information.

38. In the same June 14, 2006 letter, AIGDC advised MPC that National Union was disclaiming any duty for two lawsuits in which the defendants had been named as defendants

(the *Highlands, Chevron* and *State Farm* lawsuits) because these lawsuits did not allege "property damage" arising out of an "occurrence" during the applicable policy period of National Union Policy No. 346-98-38.

39.     In that same letter, AIGDC also reserved all rights on behalf of National Union under National Union Excess Liability Policy No. 346-98-38 for the remaining lawsuits.

40.     MPC thereafter tendered the *Loudermilk* Action under an additional six policies issued by National Union, including Policy Nos. 346-39-50, 346-39-51, and 346-39-52 for the period from December 1, 1998 to December 1, 2001; Policy No. GE 2860026 for the period from December 1, 2002 to December 1, 2003; Policy No. BE 5683494 for the period from December 1, 2003 to December 1, 2004; and Policy No. BE 2685195 for the period from December 1, 2004 to July 25, 2005.

41.     AIGDC subsequently reserved all rights on behalf of National Union under all of the National Union policies.

42.     In late July 2008, MPC informed National Union that there was a mediation scheduled in the *Loudermilk* Action on September 9-10 and September 23, 2008.  MPC refused, however, to provide National Union with sufficient information about the *Loudermilk* Action to allow National Union to properly assess its duties, if any, under the relevant Policies.

43.     In October 2008, MPC entered into a settlement with the *Loudermilk* Plaintiffs under which MPC agreed to pay the *Loudermilk* Plaintiffs $15 million and provides for the future, contingent "fund" that will pay up to $10 million to class members to reimburse the cost of repairing or replacing USTs and remediate releases of gasoline from such failed tanks.

44.     By letter dated March 13, 2009, MPC advised National Union and Lexington that in addition to the $15 million it would be paying to settle the *Loudermilk* action, it had incurred

in excess of $37 million in litigation costs through December 31, 2008 in connection with the *Loudermilk, State Farm, Highlands, Gray, and Ross* actions in addition to costs spent on "Project Charleston," which, according to MPC, involved testing underground storage tanks and related equipment (hereinafter collectively referred to as "MPC's defense costs"). MPC demanded that National Union and Lexington pay MPC a total of $28.5 million in insurance coverage representing the full limits of liability of National Union and Lexington's Policies in effect during the December 1, 2002 to December 1, 2003 policy period. MPC did not indicate that it would be making any payments under its SIRs for other, relevant policy periods.

### The 1998-2001 Policy Provisions

45.    National Union Policy No. 346-39-50 and Lexington Policy No. 8780278 in effect for the annual policy periods December 1, 1998 to December 1, 1999, December 1, 1999 to December 1, 2000, and December 1, 2000 to December 1, 2001 follow form to AAIC Policy No. 01-A2-UM-0000149-01 for the same periods.

46.    AAIC Policy No. 01-A2-UM-0000149-01 provides that "[t]he Company agrees to pay on behalf of the 'Insured' the 'Ultimate Net Loss' in excess of the Retained Limit hereinafter stated, which the 'Insured' may sustain by reason of the liability imposed upon the 'Insured' by law, arising out of an occurrence or assumed by the 'Insured' under contract, for: (a) 'Personal Injury' liability; (b) 'Property Damage' liability; or (c) 'Advertising Liability.'"

47.    AAIC Policy No. 01-A2-UM-0000149-01 defines "Named Insured" as including "any subsidiary Company . . . of the 'Named Insured' and any other company coming under the 'Named Insured's' control of which it assumes active management."

48.    AAIC Policy No. 01-A2-UM-0000149-01 defines "Ultimate Net Loss" as "the total of the following sums with respect to each occurrence:

1. All sums which the 'Insured,' or any company as his insurer, or both, is legally obligated to pay as damages, whether by reason of adjudication or settlement, because of . . . 'Property Damage' . . . to which this Policy applies, and

2. All expenses incurred by the 'Insured' in the investigation, negotiation, settlement and defense of any claim or suit seeking such damages . . . , provided 'Ultimate Net Loss' shall not include any damages or expense because of liability excluded by this Policy.

This Policy shall not apply to defense, investigation, settlement or legal expenses covered by underlying insurance."

49. AAIC Policy No. 01-A2-UM-0000149-01 contains the following "RETAINED LIMIT—DEFENSE provision" in part as follows:

With respect to any occurrence not covered, as warranted, by the underlying policies listed in Schedule A hereof or not covered by any other underlying insurance collectible by the "Insured", but covered by the terms and conditions of this Policy except for the amount of Retained Limit specified in Item 4 (C) of the Declarations:

1. The "Insured" shall have the obligation to provide at his own expense adequate defense and investigation of any claim and to accept any reasonable offer of settlement within the Retained Limit and in event of failure of the "Insured" to comply with this clause, no loss, cost or expense shall be payable by the Company.

2. In the event of a claim or claims arising which appear likely to exceed the Retained Limit, no cost, other than loss adjusting expenses, shall be incurred by the "Insured" without the written consent of the Company, which consent shall not be unreasonably withheld.

3. The Company shall have the right in all cases, at its own expense, to assume charge of the defense and/or settlement of a claim and, upon written request from the Company, the "Insured" shall tender such portion of the Retained Limit as the Company may deem, and the "Insured" may agree, necessary to complete the settlement of such claim, agreement by the "Insured" not to be unreasonably withheld.

50. AAIC Policy No. 01-A2-UM-0000149-01 contains the following "RETAINED LIMIT—LIMIT OF LIABLITY" provision:

[T]he Company's liability shall be only for the "Ultimate Net Loss" in excess of the "Insured's" retained limit being the lesser of:

(a) The total of the applicable limits of the underlying policies listed in Schedule A hereof, and the applicable limits of any other underlying insurance collectible by the "Insured"; or

(b) An amount as stated in Item 4 (C) of the Declarations [the SIR] as the result of any one occurrence not covered by the said policies of insurance;

and then up to an amount not exceeding the amount as stated in Item 4 (A) of the Declarations as the result of any one occurrence. There is no limit to the number of occurrences during the Policy Period for which claims may be made, except that the liability of the Company on account of all occurrences during each Policy Year shall not exceed the aggregate amount stated in Item 4 (B) of the Declarations separately in respect of:

1. The Product Hazard[.]

\* \* \*

In the event of the reduction of the aggregate limits of liability of the underlying policies listed in Schedule A, this Policy, subject to the above limitations, in the event of reduction shall pay the excess of the reduced underlying limits.

51. AAIC Policy No. 01-A2-UM-0000149-01 defines "Occurrence" to mean "either an accident or happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally causes injury to persons or tangible property during the Policy Period. All damages arising out of such exposure to substantially the same general conditions shall be considered as arising out of one occurrence." The policy defines "Property Damage" to mean "physical injury to, destruction of or loss of use of tangible property."

52. AAIC Policy No. 01-A2-UM-0000149-01 applies only "to occurrences happening anywhere during the Policy Period."

53. AAIC Policy No. 01-A2-UM-0000149-01 defines "Products Hazard" to mean "the handling or use of or the existence of any condition in or a warranty of goods or products manufactured, sold, handled or distributed by the 'Named Insured' or by others trading under its Name, if the occurrence happens after possession of such goods or products has been relinquished to others ..., and if such occurrence happens away from premises owned by, rented to or controlled by the Named Insured[.]"

54. Under Exclusion (D), applicable to Property Damage Liability, the Policy does not apply:

    (1)    To damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the "Insured's" products or work completed by or for the "Insured" or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

    (2)    To loss of use of tangible property which has not been physically injured or destroyed resulting from:

        (a)    A delay in or lack of performance by or on behalf of the "Insured" of any contract or agreement, or

        (b)    The failure of the "Insured's" products or work performed by or on behalf of the "Insured" to meet the level of performance, quality, fitness or durability warranted or represented by the "Insured"; but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the "Insured's" products or work performed by or on behalf of the "Insured" after such products or work have been put to use by any person or organization other than an "Insured". As used in this paragraph (b) the phrase "An "Insured" shall not include an additional "Insured" by virtue of Definition 1(a).

55. National Union Policy No. 01-A2-UM-0000149-01 contains the following Conditions:

(d)     <u>Notice of Occurrence</u>

Upon the happening of an occurrence reasonably likely to involve the Company hereunder, written notice shall be given as soon as practicable after knowledge of such occurrence by The Risk and Insurance Management Department of Ashland, Inc. to the Company or any of its authorized agents.   Such notice shall contain particulars sufficient to identify the "Insured" and the fullest information obtainable at the time.

The "Insured" shall give like notice of any claim made on account of such occurrence. If legal proceedings are begun, the "Insured", when requested by the Company, shall forward to it each paper thereon, or a copy thereof, received by the "Insured" or the "Insured's" representatives, together with copies of reports or investigations made by the "Insured" with respect to such claim proceedings.

(e)     <u>Assistance and Co-Operation</u>

Except as provided in Insuring Agreement II (Defense Settlement) or in Insuring Agreement V (Retained Limit—Limit of Liability) with respect to the exhaustion of the aggregate limits of underlying policies listed in Schedule A or in Condition (j) (Underlying Insurance), the Company shall not be called upon to assume charge of the settlement or defense of any claim made or proceeding instituted against the "Insured"; but the Company shall have the right and opportunity to associate with the "Insured" in the defense and control of any claim or proceeding reasonably likely to involve the Company. In such event the "Insured" and the Company shall cooperate fully.

(g)     <u>Loss Payable</u>

Liability of the Company with respect to any one occurrence shall not attach unless and until the "Insured", the Company in behalf of the "Insured", or the "Insured's" underlying insurer, has paid the amount of Retained Limit. . . . .

(i)     <u>Other Insurance</u>

If the collectible insurance including other insurance with this Company is available to the "Insured" covering a loss also covered hereunder (except insurance purchased to apply in excess of the sum of the Retained Limit and the Limit of Liability hereunder) the insurance hereunder shall be in excess of and not contribute with, such other insurance.

**The 2001-2002 Policy Provisions**

56.     National Union Policy No. 3469838 and Lexington Policy No. 9550127 for the

period December 1, 2001 to December 1, 2002 follows form to AAIC Policy No. 01-A2-UM-

0000149-02 except for those terms, definitions, conditions, and exclusions of the National Union

and Lexington policies. AAIC Policy No. 01-A2-UM-0000149-02 contains many similar terms

and conditions as AAIC Policy No. 01-A2-UM-0000149-01, discussed above.

57.     National Union Policy No. 3469838 contains the following "INSURING

AGREEMENTS":

      A.     We will pay on your behalf the Ultimate Net Loss in excess of the
        Underlying Insurance as shown in Item 4 of the Declarations, but only up
        to an amount not exceeding our Limits of Insurance as shown in Item 3 of
        the Declarations. Except for the terms, definitions, conditions and
        exclusions of this policy, the coverage provided by this policy shall follow
        the terms, definitions, conditions and exclusions of the First Underlying
        Insurance Policy a shown in Item 4 of the Declarations.

      B.     The Limits of Insurance shown in Item 3 of the Declarations state the most
        we will pay regardless of the number of Insureds, claims made or suits
        brought or persons or organizations making claims or bringing suits.

      C.     Maintenance of Underlying Insurance

        The limits of insurance of the Underlying Insurance shown in Item 4 of
        the Declarations shall be maintained in full effect during the period of this
        policy except for any reduction or exhaustion of aggregate limits
        contained therein solely by the payment for damages for accidents or
        occurrences, whichever is applicable, that take place during each annual
        period of this policy and that are insured by this policy.

        If you fail to comply with this requirement, we will only be liable to the
        same extent that we would had you fully complied with this requirement.

58.     National Union Policy No. 3469838 defines "Ultimate Net Loss" as "the amount

payable in settlement of the liability of the Insured after making deductions for all recoveries and

for other valid and collectible insurance, excepting however the Underlying Insurance shown in Item 4 of the Declarations."

59.    National Union Policy No. 3469838 contains the following Conditions:

C.    Defense

We will not be obligated to assume charge of the investigation, settlement or defense of any claim made, suit brought or proceeding instituted against the Insured. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, suits or proceedings relative to any accident or occurrence which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

**The 2002-2004 Policy Provisions**

60.    National Union Policy Nos. GE 2860026, BE 5683494, and BE 2685195 and Lexington Policy Nos. 9550193, 9550253, and 6500762 for the periods incepting December 1, 2002, December 1, 2003, and December 1, 2004, contain many of the same or similar policy terms, conditions, and exclusions. National Union Policy No. 2860026 contains the following "Insuring Agreements":

I.    **Coverage**

We will pay on behalf of the **Insured** those sums in excess of the Retained Limit that the **Insured** becomes legally obligated to pay by reason of liability imposed by law or assumed by the **Insured** under an **Insured Contract** because of . . . **Property Damage** . . . that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.

61.    National Union Policy No. 2860026 contains the following "Retained Limit" Provision under the "Retained Limit Amendment Endorsement."

E.    Retained Limit

We will be liable only for that portion of damages in excess of the Limits stated in the Schedule of Retained Limits attached to this policy and then up to the amount not exceeding the Each

Occurrence Limits as stated in the Declarations. The Retained Limits shown in the attached Schedule shall apply whether or not the Insured maintains applicable underlying insurance.

Coverage is limited to apply only in excess of the Retained Limits shown in the attached Schedule and only for those coverages for which a Retained Limit is shown, these Retained limits shall not include "Defense Expenses," [as defined by the policy].

62.     National Union Policy No. 2860026 contains the following "Defense" Provision under the "Retained Limit Amendment Endorsement" in part as follows:

A.     We shall have the right and duty to defend any claim or suit seeking damages covered by the terms and conditions of this policy when the applicable Limits shown in the Schedule of Retained Limits have been exhausted by payment of claims to which this policy applies.

B.     When we assume the defense of any claim or **suit**:

1.     We will defend any suit against the **Insured** seeking damages on account of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

\* \* \*

C.     In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, suit brought or proceeding instituted against the Insured. We will however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, suits or proceedings relative to any Occurrence which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

63.     National Union Policy No. 2860026 contains the following Definitions:

D.     **Impaired Property** means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

1.     It incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2.     You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1.     The repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

2.     Your fulfilling the terms of the contract or agreement.

E.     **Insured** means each of the following, to the extent set forth:

1.     The **Named Insured,** [means]:

a.     any person or organization listed in Item 1 of the Declarations, and any company that is your subsidiary as of the effective date of this policy and any company you own or control as of the effective date of this policy; and

b.     any organization newly acquired, controlled or formed by you during the policy period but only:

(1) as respects **Occurrences** taking place after you acquire, take control or form such organization;

(2) if such organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance; and

(3) if you give us prompt notice after you acquire, take control or form such organization. . . .

H.     **Occurrence** means:

1.     As respects . . . **Property Damage,** an accident, including continuous or repeated exposure to conditions, which results in . . . **Property Damage** neither expected nor intended from the standpoint of the **Insured.**  All such exposure to substantially the same general conditions shall be considered as arising out of one **Occurrence.**

J.     **Products-Completed Operations Hazard** includes all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

        a.      products that are still in your physical possession; or

        b.      work that has not yet been completed or abandoned. . . .

K.   **Property Damage** means:

    1.     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    2.     Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the Occurrence that caused it.

M.   **Your Product** means:

    **1.**     Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        a.      you;

        b.      other trading under your name; or

        c.      a person or organization whose business or assets you have acquired; and

    2.     Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

    1.     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

    2.     The providing of or failure to provide warnings or instructions.

64.    National Union Policy No. 2860026 does not apply to the following categories of damages that are excluded under the Policy:

D.   **Property Damage** to:

     1.     Property you own, rent, occupy, or use;

     2.     Personal property in the care, custody or control of the **Insured**.

E.     **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

     1.     A defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

     2.     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

G.     **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard.**

***

H.     Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

     1.     **Your Product;**

     2.     **Your Work**; or

     3.     **Impaired Property**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

O.     **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Insured.**

65.     National Union Policy No. 2860026 contains the following Conditions:

F.     Duties In The Event Of An **Occurrence**, Claim Or **Suit**

1. You must see to it that we are notified as soon as practicable of an **Occurrence** which may result in a claim under this policy. To the extent possible, notice should include:

   a. how, when and where the **Occurrence** took place;

   b. the names and addresses of any injured persons and witnesses; and

   c. the nature and location of any injury or damage arising out of the **Occurrence**.

2. If a claim is made or **suit** is brought against any **Insured** that is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

3. You and any other involved **Insured** must:

   a. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

   b. authorize us to obtain records and other information;

   c. cooperate with us in the investigation, settlement or defense of the claim or **suit**; and

   d. assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4. No **Insureds** will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

J.  Other Insurance

If other valid and collectible insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

L.  Prior Insurance

If a loss covered by this policy is also covered in whole or in part under any other excess policy issued to the **Insured** prior to the effective date of this policy, our Limits of Insurance as stated in Item 3 of the Declarations will be reduced by any amounts due the **Insured** under such prior insurance.

66.     National Union Policy Nos. BE 5683494 and BE 2685195 contain many of the same or similar policy terms, condition, and exclusion as National Union Policy No. BE 2860026 although these policies also contain certain different terms, condition, and exclusions.

## COUNT I – DECLARATORY JUDGMENT

67.     Plaintiffs incorporate paragraphs 1 through 68 as though fully set forth at this point herein in their entirety.

68.     Under the terms, conditions, and exclusions contained in the relevant Policies, Plaintiffs have no obligation to defend or indemnify Defendants with respect to the Underlying Bad Gas Lawsuits.

69.     The parties disagree as to the applicability of various terms, conditions, and exclusions contained in the Policies to the Underlying Bad Gas Lawsuits.

70.     There exists between Defendants and Plaintiffs an actual and justiciable controversy regarding the application and interpretation of certain terms, conditions, and exclusions of the National Union Excess Liability Policies to the Underlying Bad Gas Lawsuits.

71.     MPC must exhaust all underlying limits, including SIRs, for each policy year triggered for each occurrence prior to attachment of the National Union or Lexington Policies.

72.     The parties disagree as to the number of occurrences at issue, if any.

73.     MPC is responsible for the limits of liability under any AAIC Policies that may not otherwise be available due to the prior settlement between MPC and AAIC.

74. There is no coverage for the Underlying Bad Gas Lawsuits under the Policies to the extent their limits are reduced by amounts due under prior insurance.

75. There is no coverage for the Underlying Bad Gas Lawsuits under the Policies based on the Policies' other insurance provisions.

76. Other terms, conditions, limitations and/or exclusions of the Policies may apply to preclude coverage for the Underlying Bad Gas Lawsuits.

77. There is no coverage for the Underlying Bad Gas Lawsuits under the Policies for amounts attributable to Marathon Oil Company and/or Marathon Oil Corporation, who are not insured under the Policies.

78. Plaintiffs are entitled to a declaration of their rights and a judicial interpretation of the rights and obligations of the parties under the Policies.

**WHEREFORE,** Plaintiffs, National Union Fire Insurance Company of Pittsburg, PA and Lexington Insurance Company, by counsel, respectfully pray and demand as follows:

1. That the Court enter a declaratory judgment that Plaintiffs have no obligation to defend or indemnify Defendants in connection with the Underlying Bad Gas Lawsuits under the terms, conditions, and exclusions of the Policies and/or under the applicable law;

2. That Plaintiffs be awarded their costs and attorney's fees (where allowed by law); and,

3. That Plaintiffs be awarded any other relief which this Court deems just and proper.

Respectfully Submitted,

*Charles H. Cassis*

Charles H. Cassis, Esq.
Jennifer Kaelin Luhrs, Esq.
Goldberg Simpson, LLC
Norton Commons
9301 Dayflower Street
Louisville, KY 40059
PH: (502) 589-4440 / FAX: (502) 581-1344
ccassis@goldbergsimpson.com
jluhrs@goldbergsimpson.com
*Co-Counsel for Plaintiffs*

- AND -


Joseph A. Hinkhouse, Esq.
Sarah H. Dearing, Esq.
Hinkhouse Williams Walsh LLP
180 North Stetson, Suite 3400
Chicago, IL 60601
PH: (312) 784-5400 / FAX: (312) 784-5484
jhinkhouse@hww-law.com
sdearing@hww-law.com
*Co-Counsel for Plaintiffs* (*Pro hac vice* petitions to be submitted)